UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 13-3159 (PAM/FLN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Polynice Wadner, | |
| Respondent. | |

Bahram Samie, Assistant United States Attorney, for Petitioner.
Katherine Menendez, Assistant Federal Defender, for Respondent.

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Government's Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [ECF No. 1]. The petition alleges that Respondent Polynice Wadner (Wadner) presently suffers from a mental disease or defect for the treatment of which he is in need of custody and care in a suitable psychiatric facility, namely the Federal Medical Center in Rochester, MN (FMC Rochester). A hearing on this matter was held on January 17, 2014 wherein FMC Rochester Mental Health Psychologist Dr. Melissa Klein testified on behalf of the Government. Wadner refused to attend the hearing.[1] The Government submitted twenty-eight exhibits into evidence. *See* ECF No. 10. For the reasons set forth below, the Court recommends that the Petition [ECF No. 1] be **GRANTED**.

## I. FINDINGS OF FACT

---

[1] Both Wadner's court appointed counsel and FMC-Rochester staff attempted to persuade Wadner to attend the hearing.

### A.     Wadner's History of Mental Illness

Wadner is a citizen of Haiti and 36 years old. Gov't. Ex. 3 at 1. In September of 2008, Wadner was taken into custody by United States officials while living in Haiti and voluntarily extradited to the United States on chargers of conspiracy to commit hostage taking, hostage taking, and attempted hostage taking. *Id*. at 2. Wadner subsequently pled guilty to conspiracy to commit hostage taking in violation of 18 U.S.C. § 1203 in the United States District Court, District of Columbia in May 2009. *Id*. at 3.

Before entering into Bureau of Prisons (BOP) custody, Wadner was detained in a Washington, D.C. jail. *Id*. In September 2008, jail staff completed a mental health evaluation of Wadner. *Id*. The evaluation identified no history of mental health issues. *Id*. Likewise, in a presentence investigation report, Wadner reported no past treatment for mental or emotional health problems. *Id*. Wadner is currently serving a 180-month sentence, with a projected release date of June 4, 2022. *Id*. at 1.

Wadner was committed to the BOP on September 18, 2009 and initially designated to Rivers Correctional Institution in North Carolina (Rivers CI). *Id*. Records indicate that Wadner was receiving psychotropic medications upon his arrival at Rivers CI for a diagnosis of schizoaffective disorder. Gov't. Ex. 4 at 1. However, it is unclear when Wadner was prescribed this medication. The record reflects that Wadner first reported experiencing psychiatric problems while incarcerated in November 2009, when he admitted to feelings of paranoia and fleeting suicidal thoughts. Gov't. Ex. 3 at 1. Rivers CI medical staff diagnosed Wadner with schizoaffective disorder and Wadner complied with a medication regimen and remained stable for several months. *Id*. at 3-4. In May 2011, Wadner requested to discontinue his medication and signed a medication refusal form. *Id*. at

4. Against medical advice, medication was discontinued. *Id.*

Wadner's condition deteriorated after he ceased compliance with his medication treatment schedule; he began to exhibit increased paranoia and impulsive behaviors . *See id.* at 5-7. Rivers CI staff periodically placed Wadner in the Special Housing Unit (SHU) (a restrictive lockdown unit) during his incarceration at Rivers CI due to both erratic behavior and disciplinary infractions. *See id.* In September 2011, Wadner stopped eating and drinking for a period of a few days. *Id.* at 5. In an administrative complaint, Wadner claimed that the toothpaste he purchased at the commissary was intentionally altered to make him sick and he refused to eat anything while in SHU because there was a "plot on [his] life." *Id.* While housed in SHU in February 2012, Wadner continued to refuse food due to the fear that he was previously "hurt by the food" in SHU. *Id.* In March 2012, Wadner complained of a pain in his throat, claiming that the pain stemmed from an incident in a Washington, D.C. jail where correctional officers placed a device in Wadner's throat which controlled his brain and allowed others to hear his thoughts. *Id.* Wadner was again placed in SHU in December 2012 after he reported being cut with a razor and staff observed lacerations on his cheek and back; Wadner subsequently stopped eating. *Id.* at 6. In February 2013, Wadner requested to be tested for HIV, stating that he was given a food tray that contained the AIDS virus and he became infected with the virus by consuming prison food. *Id.*

Wadner engaged in multiple disciplinary infractions while incarcerated at Rivers CI.[2] Records indicate that in May 2013, Wadner twice threw feces at Rivers CI officers when the officers

---

[2] While at Rivers CI, Wadner received sanctions for four incidents of assault without serious injury, destroying property, fighting with another person, threatening to kill staff and attempting to spit and throw water on an officer, making a sexual proposal, being unsanitary or untidy, flooding his cell, refusing to obey orders, and possessing unauthorized items. Gov't. Ex. 3 at 6-7.

were attempting to deliver food to Wadner's cell. Gov't. Ex. 22-23. Further, in July 2013, Wadner headbutted a Disciplinary Hearing Officer during a disciplinary proceeding. Gov't. Ex. 24. Psychology staff found that Wadner was responsible for the infractions, but not competent at the time of the incidences. Gov't. Ex. 3 at 4.

Due to Wadner's psychiatric deterioration and his escalating assaultive behaviors, staff determined that Wadner should be transferred from Rivers CI to a Medical Referral Center for more extensive monitoring and treatment. *Id*. at 6. Rivers CI medical staff believed that so long as Wadner refused treatment, his paranoia, impulsive behaviors, and unpredictable nature posed a safety risk to staff and inmates at Rivers CI. *Id*.

Wadner arrived at FMC Rochester on August 22, 2013. *Id* at 7. Upon his arrival, Wadner denied any history of mental health problems when evaluated by FMC Rochester staff. *Id*. at 7-8. Wadner was placed on Secure Housing Status in SHU and received constant observation due to his recent active mental illness symptoms and history of aggression. *Id*. at 7.

Shortly after his transfer, Wadner began to present paranoid thoughts and his speech became increasingly agitated and pressured. *Id*. at 7- 8. Specifically, staff noted Wadner's belief that he was illegally transferred to FMC Rochester and that a conspiracy existed amongst the staff to kill him. *Id*. at 8. Additionally, Wadner began experiencing auditory hallucinations, as he reported hearing news stories about himself regarding his own death. *Id*. Staff further observed that Wadner excessively exercised in his cell and often would sleep only intermittently for a few hours each night. *Id*. Occasionally, Wadner would describe feeling "depressed," but continually refused medication to address mood instability. *Id*.

On September 25, 2013, FMC Rochester staff determined that Wadner was in need of

emergency psychiatric treatment. *Id*. Staff approached Wadner regarding a cell transfer, but Wadner refused and became increasingly agitated—throwing objects in his cell and pounding his fists on his cell door. *Id*. at 9. Medical staff determined that Wadner was an imminent threat of harm to himself, and forcibly administered injectable psychotropic medications. *Id*. at 8-9. After receiving the medications, Wadner's agitation lessened and he exhibited no symptoms of paranoia. *Id.* at 9. Wadner, however, refused ongoing use of the psychotropic medications and subsequently began to again present symptoms of paranoia and instability. *Id*. [3]

### B. Dr. Klein's Testimony

FMC Rochester Mental Health Psychologist Dr. Klein testified at the hearing regarding Wadner's mental impairments, medical history, and course of treatment at FMC Rochester.[4] Dr. Klein first met with Wadner on August 22, 2013 upon his arrival at FMC Rochester. As a member of Wadner's treatment team, Dr. Klein reported having frequent and direct contact with Wadner.

Dr. Klein testified to a reasonable degree of medical certainty that Wadner has the mental disease or defect of schizoaffective disorder, bipolar type—a disease which manifests itself through a combination of psychotic symptoms and a mood disorder. According to Dr. Klein, Wadner presents the schizophrenia symptoms of paranoia, delusions, auditory hallucinations, and disorganized thinking and behavior. Simultaneously, Wadner experiences symptoms of a mood disorder, as his disposition varies between periods of depression and hypomania. Dr. Klein

---

[3] On February 26, 2014, the Government submitted a letter directly to the Court updating the Court on Wadner's deteriorating mental condition and escalating aggressive behavior.

[4] Dr. Klein has served as a Mental Health Psychologist at FMC Rochester since October, 2012. Gov't Ex. 2.

5

extensively reviewed Wadner's history of behavior and treatment for the Court and concluded that Wadner meets the diagnostic criteria for schizoaffective disorder, bipolar type.

Additionally, Dr. Klein testified that Wadner is prescribed medications for diagnosed hypertension. Dr. Klein reported that Wadner accepted this medication when he first arrived at FMC Rochester, but currently he often refuses the medication. According to Dr. Klein, the fact that Wadner frequently refused doses of his hypertension medication was a primary factor considered by medical personnel when Wadner was forcibly medicated on September 25, 2013.

Dr. Klein stated that Wadner's condition necessitates pharmacological treatments and therapy. Dr. Klein opined that if committed, Wadner would likely be treated with a combination of psychotropic medications, psychotherapy, and educational programming. If Wadner undergoes treatment, Dr. Klein predicted that he could likely be transitioned to an open housing unit in the future. Without proper treatment, Dr. Klein projected that Wadner would continue to exhibit symptoms of schizoaffective disorder, including paranoid thoughts and aggressive behaviors.

## II.   STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 4245, a federal prisoner may not be transferred to a mental hospital or treatment facility, without the prisoner's consent or a court order. *See United States v. Watson*, 893 F.2d 970, 975 (8th Cir. 1990), *vacated in part on other grounds by United States v. Holmes*, 900 F.2d 1322 (8th Cir. 1990). If the prisoner objects to being transferred, then the court must hold a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a); *United States v. Jones*, 811 F.2d 444, 447 (8th Cir. 1987). If, after the hearing, the court finds by a preponderance of the evidence that the

person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. 18 U.S.C. § 4245(d). Whether a person is in need of care or treatment is a question of fact, left to the judicial decision maker. *Watson*, 893 F. 2d at 972. If the court determines that the inmate is suffering from a mental disease and is in need of treatment, the Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." 18 U.S.C. § 4245(d).

In sum, there are three issues therefore before this Court: (1) whether Wadner is suffering from a mental disease or defect; (2) whether he is in need of custody for care or treatment of that disease or defect; and (3) whether FMC Rochester is a suitable facility.

### III. LEGAL ANALYSIS

#### A. Mental Disease or Defect

Wadner currently suffers from a mental disease or defect. Dr. Klein testified that she diagnosed Wadner with schizoaffective disorder, bipolar type. Dr. Klein further explained that her diagnosis is in accord with that of her colleagues and that it is supported by her review of Wadner's medical records and her own personal observations of Wadner.

Dr. Klein stated that schizophrenia spectrum disorders involve a range of abnormal symptoms in one or more of five domains: (1) delusions; (2) hallucinations; (3) disorganized thinking or speech; (4) grossly disorganized or abnormal motor behavior; and (5) negative symptoms. Additionally, to satisfy the criteria for schizoaffective disorder, an individual must experience a mood disorder— "an uninterrupted period of illness during which there is a major

7

mood episode of major depression or mania concurrent with symptoms of schizophrenia. During the duration of the illness, there is a period of two or more weeks when delusions or hallucinations are present in the absence of a major mood episode, but mood symptoms are present for a majority of the total duration of the illness." Gov't. Ex. 3 at 9. [5]

At the hearing, Dr. Klein asserted that Wadner's behavior and symptoms satisfy the established criteria for a diagnosis of schizoaffective disorder, bipolar type. Dr. Klein testified that Wadner specifically suffers from the schizophrenia symptoms of paranoia, delusions, auditory hallucinations, and disorganized thinking and behavior. She summarized numerous incidences indicative of Wadner's psychotic symptoms: his belief that police officers in a Washington, D.C. jail inserted a monitoring device into his throat; his fears that the prison food was being poisoned and that SHU officers were trying to kill him; his belief that the government attempted to infect him

---

[5] Dr. Klein testified that her diagnosis of schizoaffective disorder was in accordance with the diagnostic criteria established by the American Psychiatric Association; *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V)*. The DSM-V lists the following diagnostic criteria for schizoaffective disorder:
    A.    An uninterrupted period of illness during which there is a major mood episode (major depressive or manic) concurrent with Criterion A of schizophrenia.
          **Note**: The major depressive episode must include Criterion A1: Depressed mood.
    B.    Delusions or hallucinations for 2 or more weeks in the absence of a major mood episode (depressive or manic) during the lifetime duration of the illness.
    C.    Symptoms that meet criteria for a major mood episode are present for the majority of the total duration of the active and residual portions of the illness.
    D.    The disturbance is not attributable to the effects of a substance (e.g., a drug of abuse, a medication) or another medical condition.
*Diagnostic and Statistical Manual of Mental Disorders (DSM-V)* 105 (5th ed., American Psychiatric Association, 2013).

with the AIDS virus; and his auditory hallucinations of hearing media broadcasts about himself. Dr. Klein additionally testified that Wadner simultaneously exhibits symptoms of a mood disorder, wherein he fluctuates between episodes of depression and hypomania.

Based on Dr. Klein's expert opinion and a review of the complete record, the Court concludes that the Government has satisfied its burden of showing by a preponderance of the evidence that Wadner is suffering from a mental disease or defect.

### B.   In Need of Custody for Care or Treatment

The Court finds that Wadner is in need of custody for care or treatment. The term "need" is not defined by 18 U.S.C. § 4245. Whether a person is in need of care or treatment is a question of fact, left to the judicial decision maker. *Watson*, 893 F.2d at 972. Treatment rises to the threshold of "needed" if such treatment is more than simply beneficial to the prisoner. *See United States v. Horne*, 955 F. Supp. 1141, 1147 (D. Minn. 1997) ("[T]he Court finds that treatment under 18 U.S.C. § 4245 must be more than merely beneficial. . . .) (quotations omitted); *see also United States v. Eckerson*, 299 F.3d 913 (8th Cir. 2002) (applying the legal standard adopted in *Horne* for determining whether an inmate is in need of treatment). Further, the Eighth Circuit has held that need is established if treatment would enable a prisoner to function in the general prison population. *Watson*, 893 F.2d at 982 (commitment and treatment to restore a prisoner's ability to function in the general prison population is permissible).

Here, the Government has established treatment need by showing that Wadner cannot function in the general prison population. At the hearing, Dr. Klein testified that Wadner suffers from schizoaffective disorder and psychotropic medications are needed to manage his symptoms. Specifically, Dr. Klein stated that Wadner's symptoms of delusions, paranoia, and impulsive

9

behavior prevent him from functioning within the general prison population. The record contains numerous examples where, within the past twelve months, Wadner has exhibited violent behavior toward prison staff or destroyed prison property. Among other incidences, in May 2013, Wadner twice threw feces at officers while being held in the SHU at Rivers CI. Further, in July 2013, Wadner headbutted a prison employee while attending a disciplinary hearing. Such incidences support the conclusion that Wadner is unable to function in the general prison population and is therefore in need of custody for care or treatment.

Treatment need under 18 U.S.C. § 4245 can additionally be shown when an inmate's mental disease or defect, left untreated, poses a danger to the prisoner himself. In *United States v. Clark*, the Eighth Circuit affirmed the district court's granting of a section 4245 petition where the inmate's "paranoid and delusional thinking prevented him from making rational decisions about his medical care." 122 Fed. Appx. 282, 283 (8th Cir. 2005); *see also United States v. Wedington*, Civ. No. 05-cv-767 (DSD/SRN), 2005 WL 1270915 at *4 (D. Minn., May 26, 2005) (granting a section 4245 petition where a prisoner diagnosed with schizophrenia posed a danger to himself by refusing treatments for hypertension and diabetes). Similarly, Wadner has ceased compliance with his hypertension medication and refused to allow medical staff to check his blood pressure. Dr. Klein testified that Wadner's failure to comply with medical treatments for his hypertension is likely related to paranoia Wadner experiences due to his schizoaffective disorder. Without treatment for his mental disease, it is unlikely that Wadner will be capable of making rational decisions regarding his medical care. Accordingly, Wadner poses a risk of danger to himself and is in need of treatment

pursuant to 18 U.S.C. § 4245.[6]

### C.   Suitable Facility for Treatment

Finally, the Court concludes that FMC Rochester is a suitable facility for Wadner's treatment and custody. Dr. Klein testified that Wadner could receive proper care at FMC Rochester, as it is a fully accredited hospital providing a variety of medical and therapeutic treatment options. Wadner presented no evidence to the contrary.

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Government's Petition [ECF No. 1] be **GRANTED**.


DATED: February 28, 2014                               *s/Franklin L. Noel*
                                                                            FRANKLIN L. NOEL
                                                                            United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 14, 2014** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 14, 2014,** a complete transcript of the hearing.

---

[6]   The issue of whether the government may forcibly administer psychotropic medications to Wadner is not before the Court. *See Watson* 893 F.2d at 975 (section 4245 addresses only whether an inmate may be transferred to a facility for psychiatric treatment; it does not define "treatment," nor authorize the forcible administration of psychotropic drugs).

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.